No. 30,315.

THE STATE OF KANSAS, *Appellee*, v. MAX SEARLE, *Appellant.*

(14 P. 2d 636.)

Opinion filed October 8, 1932.

*John W. Wood,* of Wichita, for the appellant.

*Roland Boynton,* attorney-general, *Everett Steerman,* assistant attorney-general, and *George L. Adams,* county attorney, for the appellee.

The opinion of the court was delivered by

SLOAN, J.: The defendant was convicted of the murder of Robert Boaz. He appeals.

The alleged murder occurred on the morning of April 3, 1930, in the city of Wichita. The appellant, Max Searle, had for several years prior to this time lived with his parents on a farm in Meade county, Kansas. He was thirty years of age and had been, for a period of five or six years, addicted to the use of morphine. In 1928, while in Wichita, he met Jack White, who persuaded him to go to his home, where he met Bonnie White, a morphine peddler and user, from whom he obtained morphine. He afterwards met

Robert Boaz, who was also a morphine user and peddler. In January, 1930, he purchased morphine from Boaz and White, which, according to his statement, caused him to become unconscious, and that while he was in this condition in the home of Bonnie White he was abused, which caused him pain and suffering, both physical and mental. About the first of April the appellant and his father came to Wichita for the purpose of purchasing morphine. He called on Robert Boaz and Bonnie White. Boaz told him that he did not have morphine in cube form, but had it in tablets and that the tablets were all right. Relying on this statement, he purchased the tablets. From there he went to the camp on West Douglas, where he and his father were camped. Late in the evening he took the tablets, and the next thing he remembered he was in St. Francis hospital.

On the morning of April 3, 1930, Mrs. La Plant saw the appellant driving a Ford sedan. He parked in front of her home at 420 East Harry street. He was there for about thirty minutes when she heard a shot fired and turned around in time to see Boaz fall. The appellant immediately drove away and turned south on Topeka street. He stopped his car in front of the home of Bonnie White and went in the house. Bonnie White was found mortally wounded, and the appellant was found in the back room of the house with two self-inflicted bullet wounds. When told that Boaz and Bonnie White were dead he expressed satisfaction. He was taken to St. Francis hospital in an ambulance and shortly thereafter was examined by Doctor Johnson.

The appellant's principal defense was that he was insane at the time of the shooting and not responsible for his act. There was evidence to the effect that he was excitable, nervous, incoherent and suffering from acute insanity when taken to the hospital. The doctor testified that he had seen a number of people who used narcotics; that the most common mixture with morphine was atropine; that atropine in poisonous doses causes acute delirium, restlessness, incoherency, sometimes acute insanity, and that the addict has no memory of what happened during the time he is under its influence. The doctor expressed the opinion that the appellant had taken adulterated morphine, and was suffering from insanity. The appellant testified at the trial that he had quit using narcotics, and was sane at that time. The jury returned a verdict of murder in the first degree.

The information was filed with the clerk of the district court on September 20, 1930, charging the appellant with murder in the first degree. The information was signed by the county attorney and the verification was properly filled out and signed by the county attorney. It appears to have been drawn to be sworn to before the clerk of the court. The clerk's signature is not attached to the jurat. A motion to quash the information was filed on April 11, 1931, setting out six reasons why the information should be quashed. The third ground was as follows:

"Third: That the said pretended information is not verified as provided by the laws of the state of Kansas."

The motion was overruled. This is assigned as error. It appears, however, from the record in the argument of the motion for a new trial that the court's attention was not called to the defect in the verification of the information. A colloquy between the court and counsel was as follows:

"Mr. Wood: If there is any doubt about this proposition on the information, I can submit authorities on it. I don't think there is any question about it. It has not been passed on, what the effect of it is in this state, but it has in other states.

"Mr. Adams: At best the only thing that is lacking is that the clerk forgot to put his name on the piece of paper.

"The Court: It may have been sworn to—probably was, but the jurat has not been completed.

"Mr. Wood: I talked to the clerk about it and the clerk doesn't know whether it was or not. He says he doesn't think it was.

"Mr. Adams: I don't think he would come in here and testify to it.

"Mr. Wood: You have a right to put him on if you want to.

"The Court: I think it is a matter that was not directly called to the attention of the court at the time, and the defendant cannot be heard later to complain of it. The question in the court's mind is as to whether it was called to the attention of the court by the recitations of the motion, which were not presented otherwise than as they appeared in the files.

"Mr. Wood: Mr. Adams knew it. He had the information here. I didn't know anything about it until I got the files after we tried the case.

"The Court: You didn't have that in mind at the time you filed your motion?

"Mr. Wood: Yes. I had in mind all the things that caused it to be defective.

"The Court: If the matter had been brought directly to the attention of the court, of course, it could have been remedied at the time. I don't see how the substantial rights of the defendant have been prejudiced by the form of the information. I will overrule the motion for a new trial."

The defect now complained of appears not to have been noticed

by appellant's attorney. Under such circumstances we are unable to see how the substantial rights of the appellant were in any way affected. Technical error is insufficient to warrant this court in granting a new trial, unless the appellant is thereby prevented from having a fair trial. (R. S. 62-1718.) Had the court's attention been called to the defect at the time it had under consideration the motion to quash, it could have been easily corrected. It is the duty of counsel to direct the court's attention to any defect in the information, which may affect the rights of his client, in order that they may be corrected at the proper time. (*State v. Osborn*, 54 Kan. 473, 38 Pac. 572; *Livingston v. Lewis*, 109 Kan. 298, 198 Pac. 952; *Clark v. Linley Motor Co.*, 126 Kan. 419, 422, 268 Pac. 860.)

The appellant contends that the court erred in the instructions given to the jury. The suggested errors are very technical, and no good purpose could be served in setting them out in detail in this opinion. We have carefully examined the instructions given by the court and are unable to discern any error. The court properly defined the issues, including the several degrees of murder and manslaughter, and instructed the jury that the appellant was presumed to be innocent, and that unless his guilt of the offense charged was established beyond a reasonable doubt he must be acquitted on such charge. The jury was instructed that the law presumes every person to be sane until evidence tending to show the contrary is adduced; that when such evidence is adduced the jury must be satisfied beyond a reasonable doubt that the appellant at the time of the commission of the offense was capable of understanding what he was doing, and that he had the power to know that his act was wrong. The instructions fairly presented the issue to the jury and properly safeguarded the rights of the appellant.

The appellant complains that one member of the jury was interested in a criminal case tried before the same court within two years of the time of this trial. There is nothing in the record to indicate that this in any way prejudiced the juror against the appellant. He appears to have qualified as a juror on his *voir dire* examination. He was not, however, questioned on this point. The fact that he was interested in a criminal case similar in nature to the one under consideration before the same court within two years of the time of the trial would not in itself disqualify him to sit as a juror in the absence of a showing of prejudice. (R. S. 62-1404 *et seq.*)

Appellant contends that the evidence was insufficient to warrant

the conviction. The evidence shows quite clearly that the appellant killed Boaz. Whether there were mitigating circumstances or lack of mentality to realize that the act was wrongful was a question of fact for the jury to determine. The question was fairly submitted to the jury and the evidence was sufficient to support their verdict, which received the approval of the trial court.

The judgment is affirmed.